UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATIONAL NAIL CORP,

    Plaintiff,

-vs-

B-KAP ENTERPRISES, INC.;
ALLAN OMLI and AUTO KAP, LLC,

    Defendants.
_____/

Case No. 05-0061
Hon: AVERN COHN

## MEMORANDUM AND ORDER DENYING DEFENDANT B-KAP ENTERPRISES, INC.'s MOTION FOR SUMMARY JUDGMENT

### I. Introduction

This is a patent case. The patent-in-suit, U.S. Patent No. 6,478,209 (the '209 patent), covers a Feeder and Drive Assembly for a Combined Staple-Cap Fastener, and is owned by plaintiff, National Nail Corporation (NNC). NNC claims that the '209 patent is infringed by defendants, and particularly defendant B-Kap Enterprises, Inc. (B-Kap). Defendants claim the right to make, use or sell products covered by the '209 patent under a license from NNC, and to that end move for summary judgment. For the reasons that follow, the Court finds that the license in question does not include the '209 patent. Accordingly, B-Kap's motion for summary judgment is DENIED.

### II. Background and Arguments

In 1999 defendant Allan Omli (Omli) sued NNC for infringement of U.S. Patent No. 5,947,362, covering a Fastener Drive Cap Assembly. The dispute was resolved by the parties entering into a cross-licensing agreement (the agreement) denominating the

National and Omli Licensure.[1]  The technology licensed to Omli under the agreement is defined as

> . . .<u>any patent rights owned now</u> by National (including any patent applications on file at this time naming any National employee, officer, agent, or shareholder as an inventor, whether or not assignment documents for that application have been signed) that relate to automatic nailers or fastener drivers or caps feeders or cap assemblies therefor, including United States Patent Application Serial No. 09/380,871, entitled Automatic Washer Feeder for Automatic Nailer (the specification and drawings of which substantially correspond with published PCT Patent Application Serial No. PCT/US99/02791, International Publication No. WO 99/39878) and U.S. Patent Application Serial No. 60/074,050, together with any continuations or divisions of these applications, any patents issuing thereon or claiming priority thereto, and any reissues or reexaminations thereof, and any foreign counterparts, the right to sue and collect for past infringement, and the invention(s) thereof. [Emphasis added].

The agreement was signed February 11, 2000.  The lawsuit was dismissed on February 18, 2000.  NNC filed the application for the '209 patent was on the same day. Obviously, the invention covered by the '209 patent was conceived and reduced to practice sometime prior to February 11, 2000.

B-Kap takes the position that the phrase "any patent rights owned now" includes "an idea so far developed that the inventor can point to a definite particular invention," <u>Burroughs Williams Co. v. Barr Laboratories, Inc</u>., 40 F.3d 1223, 1228 (Fed. Cir. 1994), which ripens into an application and eventually results in an issued patent.  NCC disagrees. It says

> The basic issue presented in B-Kap's motion is whether the

---

[1]There is no dispute that the rights of the three (3) defendants regarding the patents under the agreement are generally the same.

parties' license agreement granted B-Kap rights under the patent-in-suit by virtue of the agreement's grant to B-Kap of "patent rights owned now" by National Nail. The patent-in-suit was applied for and granted after the license agreement was executed.

Because National Nail's rights under the patent arose subsequent to the license agreement, those rights were future patent rights, not rights owned by National Nail at the time of the license agreement. Accordingly, B-Kap received no rights under the patent via the license agreement, and its motion should be denied.

### III.  Resolution

The agreement is a contract. In interpreting a contract, the Court must determine the intent of the parties. Sobczak v. Katwicki, 347 Mich. 242, 249 (1956). A prior draft of an agreement can be examined to determine the intention of the parties. Dana Corp. v. Celatix Asbestos Settlement Trust, 251 F.3d 1107, 1114 (6th Cir. 2001). There is no dispute over the fact that in the course of the negotiations leading up to the signing of the agreement, B-Kap proposed that the phrase "or in the future" be included following the phrase "patent rights owned now," and that NNC rejected the inclusion. Omli, who negotiated the agreement, testified in his deposition as follows:

Q. That phrase or in the future, is it fair to say that that was a phrase that your side wanted in the license agreement?

A. That was a phrase that our side wanted for both sides to have.

Q. Yeah. Under both definitions for license rights?

A. That's correct.

Q. And is it fair to say that the National Nail side wanted the phrase stricken?

A. With the explanation National wanted it stricken, that they had other products that they were working on or may have had that would be

close enough to be a tie-in. So they did not want to do that.

Moreover, there is a difference between a trade secret right and a patent right. <u>State Contracting and Engineering Corp. v. State of Florida</u>, 258 F.3d 1329, 1339 (Fed. Cir. 2001). Conventionally a patent right arises on the issuance of the patent. <u>Gasser Chair Co., Inc. v. Infanti Chair Mfg. Corp.</u>, 60 F.3d 770, 777 (Fed. Cir. 1995). As explained in <u>Sunbeam Products, Inc. v. Wing Shing Products (BV1) Ltd.</u>, 311 B.R. 378, 391 (S.D.N.Y. 2004):

> [T]he proposition that the assignment of all 'existing patent rights' captures an assignment of a mere idea or unfiled patent application is unsupported, absent some specific indication in the agreement that such an assignment was intended ... [T]he only way to give ordinary meaning to the word 'existing' is to exclude rights to apply for possible patents in the future.

The Court finds that the "Existing patent rights" and "patent rights owned now" are synonymous.

The parties to the agreement clearly intended that only existing patents as of the date of the agreement and applications for patents as of the date of the agreement which ripened into patents were licensed. In the circumstances of the negotiations the '209 patent was not covered by the agreement, and for this reason the court denies summary judgment to B-Kap.

SO ORDERED.

Dated: December 7, 2006        s/Avern Cohn
                               AVERN COHN
                               UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, December 7, 2006, by electronic and/or ordinary mail.

                               s/Julie Owens
                               Case Manager, (313) 234-5160